1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALEKSANDR BINKOVICH,<br><br>                    Plaintiff,<br>         v.<br><br>OFFICER BARTHELMY, et al,<br><br>                    Defendants. | Case No. 5:11-cv-03774-PSG<br><br>**ORDER GRANTING-IN-PART MOTION FOR JUDGMENT AS A MATTER OF LAW, DENYING MOTION FOR A NEW TRIAL AND GRANTING-IN-PART MOTION FOR ATTORNEY'S FEES**<br><br>**(Re: Docket Nos. 86, 87)** |

Late one Saturday night, a bachelor party at the Hilton San Jose got out of hand.  After the hotel called the police, the arriving officers confronted a number of party guests emptying out of an elevator in the hotel's lobby.  One such guest was Plaintiff Aleksandr Binkovich.  Moments after stepping past the elevator doors, Binkovich was confronted by Defendant Officer Bruce Barthelmy and touched on the shoulder.  When Binkovich brushed Barthelmy aside and attempted to walk past, Barthelmy took Binkovich into custody using a wristlock and leg sweep that knocked Binkovich over a planter and to the ground.  Binkovich suffered a bloody nose, lost jewelry and spent a night in jail.

After a week-long trial, a jury of nine citizens found that Barthelmy's actions toward Binkovich were excessive and awarded both compensatory and punitive damages.  Barthelmy now

1

asks the court to reverse those decisions, or at least order a new trial.  Because the jury's verdict was supported by substantial evidence, the court GRANTS Barthelmy's motion for judgment as a matter of law, but only as to punitive damages.  The court also GRANTS-IN-PART Binkovich's motion for attorney's fees.

# I. BACKGROUND

Cases go to juries because the facts are muddled.  There is no clear and decisive picture of what happened that night, nor is there ever likely to be.

Everyone agrees that on the night in question, Binkovich and his friends were upstairs in a hotel room at the Hilton hotel, and the hotel complained that they were too loud.  After at least one warning visit, the hotel asked to Binkovich's party to leave.  They did not immediately do so.  The hotel then called the police to report the disturbance, but shortly thereafter, before the police arrived, Binkovich and his friends left the room and started down the elevators.  The police were just walking in to the hotel lobby as the elevators opened, and Binkovich stepped out.  It seems that everyone agrees he saw the officers, but after that, there is consensus on little else.

Binkovich testified to having been raised with a very solid respect for law enforcement officers, so when he saw the officers, he raised his hands in a signal of almost playful surrender, smiled at the officers and began to calmly walk toward the hotel front desk to ask for a refund on the room.  This path led him past where the officers were standing.  As he walked by, Barthelmy reached out and – without any discernible warning – grabbed his shoulder.  Binkovich does not like to be touched, so he brushed the officer's hand away and told him not to touch him.  Barthelmy immediately responded by sweeping Binkovich's legs out from under him, shoving his face into the ground, and placing him in a wristlock.  His nose bleeding and jewelry missing, Binkovich was then arrested and taken to the local jail, where he spent the next seven hours.  He was never prosecuted.

Case No. 5:11-cv-03774-PSG
ORDER GRANTING-IN-PART MOTION FOR JUDGMENT AS A MATTER OF LAW,
DENYING MOTION FOR A NEW TRIAL AND GRANTING-IN-PART MOTION FOR
ATTORNEY'S FEES

1

2          The police tell a different story.  Three sworn officers testified that Binkovich stumbled out

3    of the elevator, waving a belt around his head like a weapon, and reeking of alcohol.  The hotel had

4    reported that one of the guests was belligerent with the security guards and had threatened to go

5    physical.  Binkovich stumbled in their direction, still waving the belt, and Barthelmy touched his

6    shoulder, guided him toward the wall, and asked him to talk to them.  Binkovich hit his hand away

7    and assumed an aggressive posture.  Responding to this perceived threat, Barthelmy swept

8    Binkovich's legs out from under him, and the pair of them tripped over a planter.  Once on the

9    ground, Barthelmy placed Binkovich in a wristlock and arrested him.

10                                    **II. LEGAL STANDARDS**

11          Fed. R. Civ. P. 50(b) provides that, upon a renewed motion for judgment as a matter of law,

12   the court may: (1) "allow judgment on the verdict, if the jury returned a verdict," (2) "order a new

13   trial" or (3) "direct the entry of judgment as a matter of law."  To grant a Rule 50(b) motion, the

14   court must determine that "the evidence, construed in the light most favorable to the non-moving

15   party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's."[1]  In

16   other words, to set aside the verdict, there must be an absence of "substantial evidence" – meaning

17   "relevant evidence that a reasonable mind would accept as adequate to support a conclusion" – to

18   support the jury's verdict.[2]  "Substantial evidence is more than a mere" scintilla;[3] it constitutes

19   "such relevant evidence as reasonable minds might accept as adequate to support a conclusion even

20

---

[1] *Callicrate v. Wadsworth Mfg.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)) ("The Ninth Circuit upholds any jury verdict supported by substantial evidence.").

[2] *Id.*

[3] *Chisholm Bris. Farm Equip. Co. v. Int'l Harvester Co.*, 498 F.2d 1137, 1140 (9th Cir. 1974) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Case No. 5:11-cv-03774-PSG
ORDER GRANTING-IN-PART MOTION FOR JUDGMENT AS A MATTER OF LAW,
DENYING MOTION FOR A NEW TRIAL AND GRANTING-IN-PART MOTION FOR
ATTORNEY'S FEES

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

if it is possible to draw two inconsistent conclusions from the evidence."[4]  In reviewing a motion

for judgment as a matter of law, the court "must view the evidence in the light most favorable to

the non-moving party and draw all reasonable inferences in its favor."[5]  "In ruling on such a

motion, the trial court may not weigh the evidence or assess the credibility of witnesses in

determining whether substantial evidence exists to support the verdict."[6]

   Fed. R. Civ. P. 59 states that the court "may, on motion, grant a new trial on all or some of

the issues."  The trial court may grant a new trial, even though the verdict is supported by

substantial evidence, if "the verdict is contrary to the clear weight of the evidence[,] is based upon

evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of

justice."[7]  In reaching this conclusion, he has "the right and indeed the duty to weigh the evidence

as he saw it," rather than preferencing the view of the jury or the non-moving party. The trial judge

has [] large judicial discretion" in making this determination.[8]

### III.  DISCUSSION

   For all practical purposes, the court has five separate motions before it.  First, Barthelmy

moves for judgment as a matter of law on the matter of qualified immunity.  If qualified immunity

is not granted, he asks the court to find as a matter of law that the force he used was reasonable and

grant judgment as a matter of law on those grounds.   If the court finds that substantial evidence in

---

[4] *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).

[5] *Transbay Auto Serv., Inc. v. Chevron U.S.A., Inc.*, Case No. 3:09-cv-04932-SI, 2013 WL 496098, at *2 (N.D. Cal. Feb. 7, 2013) (quoting *Josephs v. Pacific Bell,* 443 F.3d 1050, 1062(9th Cir. 2006) ("We must view the evidence in the light most favorable to the nonmoving party – here, Josephs, – and draw all reasonable inferences in that party's favor.")).

[6] *Id.* (citing *Mosesian v. Peat, Marwick, Mitchell & Co.,* 727 F.2d 873, 877 (9th Cir. 1984) ("Neither the district court nor this court may weigh the evidence or order a result it finds more reasonable if substantial evidence supports the jury verdict.")).

[7] *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999).

[8] *Vickery v. Fisher Governor Co.*, 417 F.2d 466, 470 (9th Cir. 1969).

Case No. 5:11-cv-03774-PSG
ORDER GRANTING-IN-PART MOTION FOR JUDGMENT AS A MATTER OF LAW,
DENYING MOTION FOR A NEW TRIAL AND GRANTING-IN-PART MOTION FOR
ATTORNEY'S FEES

fact supports the jury's verdict, he asks the court to independently re-weigh the evidence and grant him a new trial.  If all of those motions fail, he asks the court at least to strike the jury's punitive damages award as unsubstantiated by the evidence.  Finally and independently, Binkovich asks the court to award him reasonable attorney's fees pursuant to 42 U.S.C. Section 1988.  Because the necessity of a ruling on each of the above motions depends on the outcome of its predecessor, the court will take them up in turn.

### A.  Barthelmy Has Waived His Right To Invoke Qualified Immunity's Protections

Qualified immunity is a simple doctrine in concept.  It shields government officials from civil liability under Section 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[9]  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[10]  The doctrine provides the police with an "entitlement not to stand trial or face the other burdens of litigation," offering "an immunity from suit rather than a mere defense to liability"[11] and protecting "all but the plainly incompetent or those who knowingly violate the law."[12]  The qualified immunity analysis requires that the court evaluate two independent prongs: whether the officer's conduct violated a constitutional right and whether that

---

[9] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person" would have known).

[10] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[11] *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

[12] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

5

United States District Court
For the Northern District of California

1    right was clearly established at the time of the incident.[13]  The plaintiff in a 1983 suit "bears the

2    burden of proving that the rights" he "claims were 'clearly established' at the time of the alleged

3    violation."[14]

4        Unfortunately, the evolution of this simple doctrine has made its application more

5    complicated.   Qualified immunity is an affirmative defense, so the burden of initially raising the

6    matter rests with the government,[15] and trial courts have been repeatedly instructed to resolve the

7    question of qualified immunity at the "earliest possible stage in litigation."[16]  Up until 2009, once

8    qualified immunity was raised, a court had to make a determination on the factual prong of the

9    analysis (ie. was there a constitutional violation) before it could proceed to the legal prong

10   (whether that violation was clearly established as unconstitutional at the time of the incident).[17]  As

11   a result, where there were disputed issues of material fact – as there often are in such cases – courts

12   were hard pressed to resolve the question before evidence was presented, and even then, conflicting

13   deposition testimony could mandate a trial.[18]  That all changed with *Pearson v. Callahan*, in which

14   the Supreme Court decided that judges could "exercise their sound discretion in deciding which of

15   the two prongs of the qualified immunity analysis should be addressed first in light of the

16

17

18   _____

[13] *See Pearson*, 555 U.S. at 232 ("Qualified immunity is applicable unless the official's conduct
19   violated a clearly established constitutional right.").

20   [14] *Moran v. Washington*, 147 F.3d 839, 844 (9th Cir. 1998) (citing *Davis v. Scherer*, 468 U.S. 183,
     197 (1984)).

21   [15] *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

22
     [16] *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).
23
     [17] *See Mitchell*, 472 U.S. at 553; *see also Anderson v. Creighton*, 483 U.S. 635, 646 (1987).
24
     [18] *See, e.g., Wilkins v. City of Oakland,* 350 F.3d 949, 955 (9th Cir. 2003) (holding that where a
25   constitutional violation turns on the objective reasonableness of an officer's actions, the qualified
     immunity question depends on the jury's version of the facts); *see also Willingham v. City of San*
26   *Leandro,* Case No. 3:06-cv-003744 MMC, 2008 WL 753908, at *1 (finding that there were
     disputed issues of material fact, such that the question of qualified immunity must be left to a jury)
27   (N.D. Cal. Mar. 19, 2008).

28
     Case No. 5:11-cv-03774-PSG
     ORDER GRANTING-IN-PART MOTION FOR JUDGMENT AS A MATTER OF LAW,
     DENYING MOTION FOR A NEW TRIAL AND GRANTING-IN-PART MOTION FOR
     ATTORNEY'S FEES

**United States District Court**
For the Northern District of California

circumstances in the particular case at hand."[19]  Under this new framework, courts are free to address the legal prong first and resolve the question of qualified immunity as early as a motion to dismiss or by judgment on the pleadings.[20]

Given that qualified immunity was designed to provide immunity from the burden, expense and hassle of a lawsuit, rather than simply from liability, one might reason that defendants should be required to raise it at the earliest stage possible.  Case after case describes their "entitlement" to the immunity's protection from the very beginning of the suit, and repeatedly, courts have been instructed to resolve the matter at the earliest stage possible. The Supreme Court has repeatedly held that its protections are "effectively lost if a case is erroneously permitted to go to trial,"[21] so perhaps defendants who proceed to trial have waived their immunity from suit.  Not necessarily. It turns out that the key word in the Supreme Court's language is "effectively."

Under Ninth Circuit case law, a defendant does not automatically waive qualified immunity by allowing a case to proceed beyond the earliest possible stage at which it could be asserted.[22] Courts have allowed it to be raised for the first time at summary judgment, at trial and in fact as late as five years after litigation begins.  Such late assertions, however, are only permissible "[i]n the absence of a showing of prejudice."[23]

---

[19] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[20] *See, e.g. Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 965 (9th Cir. 2010).

[21] *Mitchell*, 472 U.S. at 526.

[22] *See Norwood v. Vance*, 591 F.3d 1062, 1076 (9th Cir. 2010) (granting qualified immunity on appeal despite the fact that defendants had neither argued nor preserved it at trial because plaintiffs had not raised waiver on appeal).

[23] *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993); *see also Norwood v. Vance*, 591 F.3d 1062, 1076 (9th Cir. 2010) (allowing the assertion of qualified immunity for the first time at summary judgment only where it did not prejudice the plaintiff).

7

Case No. 5:11-cv-03774-PSG
ORDER GRANTING-IN-PART MOTION FOR JUDGMENT AS A MATTER OF LAW,
DENYING MOTION FOR A NEW TRIAL AND GRANTING-IN-PART MOTION FOR
ATTORNEY'S FEES

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

The Ninth Circuit has recognized that an unreasonable delay in asserting new theories, whether due to gamesmanship or simple oversight, can constitute prejudice if the delay "imposed potentially high, additional litigation costs" on the other party that "could have easily been avoided" by asserting the theory earlier.[24]  Although Barthelmy's brief reference to qualified immunity as a stock defense in his answer could arguably qualify as "asserting" the theory, he never mentioned it again until trial.  The Ninth Circuit has rejected that precise tactic in the context of other affirmative defenses:

> The statement of a defense in [] general terms suffices where 'a single, definite, and certain question' is thereby presented. But [where such a question] was not apparent, [] the defense should have been supported with sufficient particularity to apprise the court of the defect. The failure of appellee to bring to the trial court's attention the particulars upon which it relied in its assertion that the complaint failed to state a claim upon which relief could be granted constitutes a waiver of its right to rely on that defense.[25]

Although the Ninth Circuit has never addressed this cursory pleading style in the context of qualified immunity, other circuits have held that when it is raised "in a perfunctory manner, unaccompanied by some effort at developed argumentation" by the summary judgment stage "are deemed waived."[26]  They also have affirmed a trial court's discretion to find qualified immunity waived where "a defendant has failed to exercise due diligence," "has asserted the defense for

---

[24] *AmerisourceBergen Corp. v. Dialysist W., Inc.,* 465 F.3d 946, 954 (9th Cir. 2006).

[25] *Smeed v. Carpenter,* 274 F.2d 414, 418 (9th Cir. 1960) ("The failure to give notice could have been raised under the Federal Rules of Civil Procedure either by motion or answer. Rule 12(b), 28 U.S.C.A. Appellee claims that it did raise the defense by the fourth defense in its answer by the allegation 'That the complaint fails to state a claim upon which relief may be granted,' which is the language suggested by Form 20 accompanying the Federal Rules of Civil Procedure.").

[26] *Guillemard-Ginorio v. Contreras-Gomez,* 490 F.3d 31, 37 (1st Cir. 2007) (citing *De Araujo v. Gonzáles,* 457 F.3d 146, 153 (1st Cir. 2006)) (holding that the district court did not abuse its discretion in finding defendants had waived their qualified immunity defense).

8

Case No. 5:11-cv-03774-PSG
ORDER GRANTING-IN-PART MOTION FOR JUDGMENT AS A MATTER OF LAW,
DENYING MOTION FOR A NEW TRIAL AND GRANTING-IN-PART MOTION FOR
ATTORNEY'S FEES

United States District Court
For the Northern District of California

1  dilatory purposes"[27] or otherwise failed to demonstrate "a reasonable modicum of diligence in

2  raising the defense."[28]

3          Here, Binkovich would be severely prejudiced by Barthelmy's unreasonable delay in

4  asserting qualified immunity if he were allowed to assert it now.  This case ran for two years and

5  eight months, from complaint to jury verdict.  In that time, Binkovich's costs and expenses in

6  pursuing the suit escalated dramatically as trial approached.  In the first year of the suit,

7  Binkovich's attorney spent a just under seven hours total on the case.[29]  Barthelmy did not seek to

8  dismiss the suit based on qualified immunity.  By the time discovery was over 29 months later,

9  he'd still only invested another 17.4 hours of attorney time, though the cost of taking five

10  depositions had been incurred.[30]  Even with all the evidence before him, Barthelmy still did not

11  invoke the protection of qualified immunity to get out of the expense of trial; no summary

12  judgment motion was filed.  By the end of trial, however, 32 months after the complaint was filed,

13  Binkovich had invested 209.4 hours of attorney time and thousands of dollars in costs to vindicate

14  his constitutional rights.

15

16          Barthelmy's present argument for qualified immunity is a purely legal one that could have

17  been made at any stage of this litigation.  In the light most favorable to Binkovich, the facts have

18  not substantially changed from complaint through today, and the law at issue was fixed in 2009.  It

19  thus was within the Barthelmy's power and ability to invoke qualified immunity at any time.  Had

20  he done so at any point before trial and prevailed, Binkovich's costs would have been minimal. Yet

21  Barthelmy proceeded to litigate the matter through trial, imposing substantial burden and expense

22

23  _____

24  [27] *English v. Dyke*, 23 F.3d 1086, 1090 (6th Cir. 1994).

25  [28] *Eddy v. Virgin Islands Water & Power Auth.*, 256 F.3d 204, 210 (3d Cir. 2001).

26  [29] *See* Docket No. 87-8.

27  [30] *See id.*

28

9

Case No. 5:11-cv-03774-PSG
ORDER GRANTING-IN-PART MOTION FOR JUDGMENT AS A MATTER OF LAW,
DENYING MOTION FOR A NEW TRIAL AND GRANTING-IN-PART MOTION FOR
ATTORNEY'S FEES

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

not only on Binkovich but also on the court and nine members of the community, who were called to abandon their daily lives for over a week to resolve this dispute.  Those costs must factor into the court's analysis.  Because Binkovich has been prejudiced to the tune of over a hundred thousand dollars, and because the protection from suit afforded by qualified immunity has been "effectively lost" given the week-long trial, [31] Barthelmy has waived his right to invoke qualified immunity and denies his motion for judgment as a matter of law on this basis. [32]

### B.  Substantial Evidence Supports The Jury's Finding That Barthelmy's Force Was Excessive

Even if he is not entitled to qualified immunity, Barthelmy argues that he "used force permitted by the Constitution to overcome Plaintiff's physical resistance to the detention." [33]  This characterization takes for granted that Binkovich had in fact been detained at the time of his "physical resistance," an assumption that is undermined by substantial evidence in this record.  He also argues that the amount of force he used in detaining Binkovich was objectively reasonable as a matter of law in the Ninth Circuit.  Because an evaluation of excessive force requires "careful attention to the facts and circumstances of each particular case" [34] and because none of the cases cited present an analogous set of circumstances, this argument is unsupported.  Barthelmy's motion for judgment as a matter of law on these grounds must therefore be denied as well.

---

[31] *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

[32] *See also Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994) (finding that on a motion for judgment as a matter of law, there was no reason to believe that a judge's opinion as to an officer's likely motivation and understanding of "clearly established law" would have been superior to that of a jury, such that allowing the issue to go to the jury was either not error or harmless).

[33] Docket No. 86 at 1.

[34] *Graham v. Connor*, 490 U.S. 386, 396 (1989)

10

Case No. 5:11-cv-03774-PSG
ORDER GRANTING-IN-PART MOTION FOR JUDGMENT AS A MATTER OF LAW,
DENYING MOTION FOR A NEW TRIAL AND GRANTING-IN-PART MOTION FOR
ATTORNEY'S FEES

**1. The Jury Heard Substantial Evidence That Barthelmy Was Not Been Seized At The Time He Encountered Barthelmy**

A seizure has only been effectuated when "in view of all the circumstances, a reasonable person would have believed that he was not free to leave."[35]  In making that determination, a factfinder must decide if "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."[36] Such conduct may include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."[37] Absent such circumstances, "otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person."[38]

In view of all the circumstances here, the jury could reasonably have concluded that the police conduct did not communicate to Binkovich that he was not free to ignore the police presence, but rather was required to submit to Barthelmy's grasp.  In the version of the facts most favorable to Binkovich, Barthelmy did not give Binkovich any verbal commands before he reached out to touch him.[39]  The officer's placement, in the lobby on the way to the hotel exit, would not necessarily have been considered threatening.  No one testified that weapons were displayed, and

---

[35] *United States v. Mendenhall,* 446 U.S. 544, 554 (1980).

[36] *United States v. Washington*, 490 F.3d 765, 769 (9th Cir. 2007) (quoting *Florida v. Bostick,* 501 U.S. 429, 437 (1991)).

[37] *Id.*

[38] *Id.*

[39] The jury was free to credit Binkovich's testimony and disregard Barthelmy's alternative version of events.  *Cf. Guy v. City of San Diego*, 608 F.3d 582, 588 (9th Cir.2010) ("[I]t has long been held that a jury may properly refuse to credit even uncontradicted testimony.") (citing *Quock Ting v. United States*, 140 U.S. 417, 420–21 (1891)).

11

Case No. 5:11-cv-03774-PSG
ORDER GRANTING-IN-PART MOTION FOR JUDGMENT AS A MATTER OF LAW, DENYING MOTION FOR A NEW TRIAL AND GRANTING-IN-PART MOTION FOR ATTORNEY'S FEES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

there was conflicting evidence about the degree of authority asserted prior to Binkovich going to the ground.  In this context as any many others, "evaluating the reasonableness of human conduct is undeniably within the core area of jury competence."[40]  As a group of average citizens, the jury is uniquely situated to evaluate whether Binkovich would reasonably have understood from Barthelmy's conduct that he was not free to leave.  Here, they decided that he would not,[41] and the court "may not substitute its view of the evidence for that of the jury."[42]

Because substantial evidence supports a finding that Binkovich was not detained, then he, like any other citizen, had the right to "ignore his interrogator and walk away."[43]  As a result, Barthelmy had no right to touch Binkovich, and a jury could conclude that Barthelmy used excessive force by taking Binkovich down for exercising his right to walk away.

## 2. The Amount Of Force Barthelmy Used Was Not Objectively Reasonable As A Matter Of Law

Even if Barthelmy had initiated a lawful detention of Binkovich, the cases he cites do not establish that in light of the circumstances Barthelmy faced, the force he used was reasonable as a matter of law.  An excessive force analysis requires "careful attention to the facts and circumstances of each particular case,"[44] including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

---

[40] *Sloman v. Tadlock*, 21 F.3d 1462, 1468 (9th Cir. 1994); *see also Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001) ("reasonableness is often a question for the jury").

[41] This view is reinforced by the fact that the jury found that Barthelmy had reasonable suspicion to detain Binkovich. *See* Docket No. 80 at 2.  They simply contested whether he communicated that intent to Binkovich before taking him to the ground.

[42] *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir.2001).

[43] *United States v. Baroni*, 14 F. App'x 815, 820 (9th Cir. 2001) (quoting *Terry v. Ohio*, 392 U.S. 1, 32–33 (1968)).

[44] *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Case No. 5:11-cv-03774-PSG
ORDER GRANTING-IN-PART MOTION FOR JUDGMENT AS A MATTER OF LAW, DENYING MOTION FOR A NEW TRIAL AND GRANTING-IN-PART MOTION FOR ATTORNEY'S FEES

resisting arrest or attempting to evade arrest by flight."[45]   Each of the cases proffered by Barthelmy differs from the facts at hand with respect to at least one important consideration: the arrestee had been presented with a direct order from the police and refused to comply.

In *Forrester v. City of San Diego*, both a district judge and a jury found that the San Diego Police Department's "pain compliance" policy was constitutional.   Under the policy, officers were required "first to give [non-violent] protesters an opportunity to avoid arrest by leaving the premises after a verbal warning. The police were then to arrest those who refused to leave and give them another opportunity to move voluntarily. Finally, the police were to remove the remaining demonstrators with 'pain compliance techniques' involving the application of pain as necessary to coerce movement."[46]

In *Arpin v. Santa Clara Valley Transportation Agency*, the Ninth Circuit was asked to review the district court's decision to grant summary judgment in the face of undisputed facts provided by a police officer.[47]   According to the officer's undisputed testimony, a 60-year-old woman stopped for using an expired ID "refused to cooperate and provide her Transit Identification when requested."[48]   The officer "warned [the woman] that she would be arrested if she did not cooperate," but she still refused.[49]   After the woman refused the officer's direct request to allow him to search her purse, he "grabbed [the woman's] right hand and attempted to handcuff

---

[45] *Id.* at 388.

[46] *Forrester v. City of San Diego*, 25 F.3d 804, 805 (9th Cir. 1994).

[47] *See* 261 F.3d 912 (9th Cir. 2001).

[48] *Id.*

[49] *Id.*

13

Case No. 5:11-cv-03774-PSG
ORDER GRANTING-IN-PART MOTION FOR JUDGMENT AS A MATTER OF LAW,
DENYING MOTION FOR A NEW TRIAL AND GRANTING-IN-PART MOTION FOR
ATTORNEY'S FEES

1    [her]. [The woman] stiffened her arm and attempted to pull free. In response, [the officer] used

2    physical force to handcuff Arpin," and succeeded in doing so "without injury."[50]

3            Finally, in *Henderson v. City of Simi Valley*, the Ninth Circuit was again asked to review

4    the district court's decision to grant summary judgment where the plaintiff failed to raise a material

5    question of fact on her excessive force claim.[51]   The officers in that case presented a valid court

6    order to a yelling and screaming woman, who refused to comply with its provisions.[52]  She began

7    to release two Rottweilers on the officers, who were forced to stop here by force.[53]  The woman

8    continued to fight even after being restrained, and eventually suffered some minor bruising.[54]

9

10           In each of these cases, the police only used force after the arrestee had directly refused a

11   verbal instruction.  The arrestees also each continued to resist after the officers began to use force

12   to induce compliance.  Neither factor is present here, when accepting the facts in the light most

13   favorable to Binkovich.  Binkovich testified that he did not hear a command of any sort, and

14   Barthelmy dedicates much of his motion to arguing that none was required.[55]  While the court

15   agrees that Binkovich has failed to identify a per se requirement that police provide a verbal

16   warning before using force, under *Graham*, the jury was entitled to consider the failure to do so as

17   one aspect of whether the arrestee was "actively resisting arrest."[56]   Here, the jury was asked to

18   evaluate the conduct of an officer faced with a suspect who may (or may not) have been involved

19

20   _____

21   [50] *Id.*

22   [51] *See Henderson v. City of Simi Valley*, 305 F.3d 1052, 1061 (9th Cir. 2002).

23   [52] *See id.* at 1055.

24   [53] *Id.*

25   [54] *Id.*

26   [55] *See* Docket No. 86 at 9-11.

27   [56]  *Graham*, 490 U.S.at 296.

28

Case No. 5:11-cv-03774-PSG
ORDER GRANTING-IN-PART MOTION FOR JUDGMENT AS A MATTER OF LAW,
DENYING MOTION FOR A NEW TRIAL AND GRANTING-IN-PART MOTION FOR
ATTORNEY'S FEES

**United States District Court**
For the Northern District of California

1  in a non-violent disturbance of the peace, who had not been given any instructions of any kind.

2  They concluded that sweeping his legs out from under him was excessive, in light of the totality of

3  the circumstances.  Once again, in light of the supporting substantial evidence, the court cannot

4  substitute its own evaluation of the facts for the jury's.

5      **C.  The Jury's Award Of Punitive Damages Cannot Stand**

6          Despite the fact that the jury's verdict must stand, its punitive damage award cannot.   In a

7  case such as this, a jury may only award punitive damages upon a finding of "evil motive or

8  intent," "reckless or callous indifference" to the constitutional rights of others or "oppression."[57]

9  On a motion for judgment as a matter of law, the court must determine whether there is "substantial

10 evidence" to support such a finding by the jury.  The overall constitutionality of a punitive damage

11 award is to be evaluated in light of three factors: (1) the degree of reprehensibility; (2) the disparity

12 between the harm suffered and the punitive damages award; and (3) the difference between the

13 remedy and the civil penalties authorized or imposed in comparable cases.[58]   These many factors

14 ultimately reduce to one fairly basic question: based on the evidence presented at trial, could a

15 reasonable jury have concluded that Barthelmy did not just make a mistake, but rather go out of his

16 way to hurt Binkovich?

17         It could not.  Not a single witness testified as to any overt cruelty by Barthelmy.  In every

18 version of the facts, Barthelmy used methods of apprehension that had been vetted and approved

19 by the police department writ large. The closest that Binkovich can come to identifying the

20 requisite "cruelty" from Barthelmy is the fact that he allowed Binkovich to get within arms' reach

---

[57] *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005).

[58] *See BMW of North America, Inc. v. Gore,* 517 U.S. 559, 574–75 (1996).

Case No. 5:11-cv-03774-PSG
ORDER GRANTING-IN-PART MOTION FOR JUDGMENT AS A MATTER OF LAW,
DENYING MOTION FOR A NEW TRIAL AND GRANTING-IN-PART MOTION FOR
ATTORNEY'S FEES

1

2   before attempting to engage with him, and thus "provoked" the confrontation.[59]  Yet Binkovich

3   cites to no case law indicating that such a minor oversight constitutes provocation, and the court's

4   own research has uncovered several cases in which more serious involvement was found not to

5   constitute provocation.[60]  Having listened to the entire trial and reviewed the record, and

6   particularly in the absence of any direct evidence or caselaw citations from Binkovich, the court

7   cannot allow the jury's punitive damage award to stand.

8       **D.  Barthelmy Is Not Entitled To A New Trial**

9       As an alternative, Barthelmy makes a general motion for a new trial under Rule 59.[61]

10  Under Rule 59, the court has "the right and indeed the duty to weigh the evidence as he saw it, and

11  to set aside the verdict of the jury, even though supported by substantial evidence where, in his

12  conscientious opinion, the verdict is contrary to the clear weight of the evidence,"[62] the verdict

13  represents a "miscarriage of justice,"[63] or where the court is "left with the definite and firm

14  conviction that a mistake has been committed by the jury."[64]  "The trial judge has [] large judicial

15  discretion" in making this determination.[65]

16

17  _____

    [59] Docket No. 90 at 14-15.

18

19  [60] *See, e.g.*, *Doi v. Aoki*, Case No. 10-cv-00639-LEK, 2012 WL 3100179, at *18 (D. Haw. July 27,
    2012) (finding that the police did not provoke a confrontation by waiting outside a residence for
20  half an hour, entering unannounced and engaging the plaintiff physically); *Bartsch v. City of
    Yakima*, 04-cv-3100-RHW, 2006 WL 211793, at *5 (E.D. Wash. Jan. 23, 2006) (rejecting the
21  notion that police had provoked a confrontation simply because they should have used less forceful
    tactics, taken more time to plan, retreated, etc.).

22  [61] *See* Docket No. 288.

23  [62] *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).

24  [63] *Id.*

25  [64] *Landes Const. Co. Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987).

26  [65] *Vickery v. Fisher Governor Co.*, 417 F.2d 466, 470 (9th Cir. 1969).

27

28
                                        16
    Case No. 5:11-cv-03774-PSG
    ORDER GRANTING-IN-PART MOTION FOR JUDGMENT AS A MATTER OF LAW,
    DENYING MOTION FOR A NEW TRIAL AND GRANTING-IN-PART MOTION FOR
    ATTORNEY'S FEES

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

This case did not represent a "miscarriage of justice." The court heard all the evidence from all the witnesses, and the picture was muddled. Everyone seemed to agree that things happened fairly quickly, but as is common in cases of eyewitness testimony, people remembered things differently. The jury, in its wisdom, took all of that into consideration and determined that overall, the picture painted by Binkovich seemed the most plausible. Given the muddled testimony with which they were presented, this outcome represents no more and no less of a "miscarriage of justice" than any other. "The cases in which courts have granted new trials in the face of conflicting witness testimony have typically involved objective evidence that completely impeaches a witness' credibility, such that the court is justified in disregarding that testimony." [66] The only area in which the court was left with a "definite and firm conviction" that something went awry was the jury's award of punitive damages, which was addressed in the motion for judgment as a matter of law above.

If plaintiffs in a Section 1983 case were required to meet the "beyond a reasonable doubt" burden of proof, the court would have serious reservations about the jury's decision. However, given Binkovich simply needed to demonstrate that his version of events was more likely than not, the court cannot say it has a definite or firm conviction that the jury was mistaken in accepting Binkovich's version of events.

### E.  Binkovich Is Entitled To Receive His Full Fee Award, But Not A Multiplier Due To The Undesirability Of The Case.

In a separate motion, Binkovich asks the court to award reasonable attorney's fees pursuant to Section 1988.[67] He has provided the court with detailed breakdowns of his attorney's time,[68] his

---

[66] *Carrethers v. Bay Area Rapid Transit*, Case No. 3:09-cv-1101-EMC, 2012 WL 1004847 (N.D. Cal. Mar. 26, 2012) (citing *Tortu v. Las Vegas Metropolitan Police Dept.*, 556 F.3d 1075 (9th Cir.2009); *Jennings v. Jones*, 587 F.3d 430, 443 (1st Cir.2009); *Ruffin v. Fuller,* 125 F.Supp.2d 105, 109–10 (S.D.N.Y. 2000)).

[67] *See* Docket No. 87.

17

Case No. 5:11-cv-03774-PSG
ORDER GRANTING-IN-PART MOTION FOR JUDGMENT AS A MATTER OF LAW,
DENYING MOTION FOR A NEW TRIAL AND GRANTING-IN-PART MOTION FOR
ATTORNEY'S FEES

1  attorney's background and experience,[69] and evidence of the prevailing rates in the area.[70]

2  Barthelmy argues that the fees requested are unreasonable for three reasons: (1) the hourly rate

3  requested by Binkovich's attorney is too high; (2) Binkovich's attorney spent too many hours in an

4  unjustifiably odd pattern on this case and (3) Binkovich's attorney's fees should be reduced to

5  because he only succeeded against one of the six defendants he initially sued.[71]   As described in

6  more detail below, each of these arguments is unpersuasive, but the court nonetheless must adjust

7  the fee request to strike Binkovich's unsubstantiated request for a 50% "multiplier" due to the

8  "undesirability of the case."

9

10                  **1.   $450 Is A Reasonable Hourly Rate For A Veteran Attorney**

11          Binkovich's requested hourly rate of $450 is reasonable for an attorney with nearly two

12  decades of civil rights litigation experience in the Bay Area.  Barthelmy complains that the hourly

13  rate should be set at $320 – the rate at which Binkovich's attorney bills his clients in other areas of

14  the law – or, at most, $400 per hour, to account for his additional experience.[72]  Yet he provides

15  neither evidence nor case law to support this proposition.  As Binkovich points out in his reply,

16  "'reasonable fees' under 42 U.S.C. Section 1988 are to be calculated according to the prevailing

17  market rates in the relevant community," not an individual attorney's usual billing practices.[73]  In

18  addition to his own experience, Binkovich has provided the sworn declaration of a managing

19

20

21  [68] *See* Docket Nos. 87-2; 87-3

22  [69] *See* Docket No. 87-7.

23  [70] *See* Docket No. 87-5.

24  [71] *See* Docket No. 90.

25  [72] *See* Docket No. 89 at 2.

26  [73] *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also Van Skike v. Dir., Office of Workers' Comp.*
    *Programs*, 557 F.3d 1041, 1049 (9th Cir. 2009) (noting that a fee award should be calculated using
27  prevailing market rates rather than an attorney's normal billing rate).

28                                                18
    Case No. 5:11-cv-03774-PSG
    ORDER GRANTING-IN-PART MOTION FOR JUDGMENT AS A MATTER OF LAW,
    DENYING MOTION FOR A NEW TRIAL AND GRANTING-IN-PART MOTION FOR
    ATTORNEY'S FEES

partner of a law firm in the area, who has a great deal of experience in civil rights cases.[74] The declaration discloses that firm's billing rates, which far exceed the $450 per hour requested by Binkovich's attorney, and opines that the requested rate is "well within the rates customarily charged in this market for comparable services."[75] Based on this evidence, and the court's own knowledge of hourly rates for legal services in this community, the court finds that $450 is a reasonable hourly rate for the legal services rendered here.

### 2.   Binkovich's Timekeeping Records Adequately Support His Request

Barthelmy next argues that "the assumption that 227 hours of time was incurred in the prosecution of this matter is wrong."[76]  He offers no evidence in support of this argument, opting instead to cast unsupported aspersions on Binkovich's timekeeping records.  Much of his skepticism seems to stem from the fact that Binkovich's counsel put in the bulk of his time in the build-up to and interval of trial.[77]  Yet Binkovich's counsel acknowledge this pattern and explained in the declaration submitted with his request that he adopts this strategy intentionally, to keep costs low early in a case and encourage the possibility of settlement.  The court has no reason to doubt this sworn declaration or the billing records supporting it.

### 3.   Binkovich Prevailed On Every Cause Of Action

In his third argument, Barthelmy asks the court to cut Binkovich's fee award by 75% in light of his "limited success."[78]  The Supreme Court has explained that lower courts have the discretion to reduce a fee award where "the plaintiff's claims are based on different facts and legal

---

[74] *See* Docket No. 87-12.

[75] *Id.* at ¶ 13.

[76] Docket No. 89 at 3.

[77] *See id.* at 4.

[78] *Id.*

19

United States District Court
For the Northern District of California

theories, and the plaintiff has prevailed on only some of those claims."[79]   That is not the case here.

Binkovich's claims were based on a single incident and a single legal theory, on which he was

successful; that theory was simply alleged against multiple defendants, all of whom played some

role. Many cases that Barthelmy cites in support of his proposed reduction involved a plaintiff

succeeding only on some portion of the wrongs they alleged.[80]   In the single case cited addressing

a downward adjustment due to failure to prevail against individual defendants on a set of

interrelated claims, *Cabrales v. County of Los Angeles*, the Ninth Circuit affirmed that adjustments

to the lodestar calculation rest solely within the discretion of the trial court.[81]   The trial judge in

*Cabrales* reduced the plaintiff's fee award by 25% because although he prevailed against the

county, he failed to prove the liability of any of the twenty individual defendants named in the

case.[82]   In his opinion, to award full compensation would "exaggerate plaintiff's overall success."[83]

The court has no such concerns here.  Binkovich went to trial with against four defendants,

prevailed against one, and was awarded full compensation for his injuries.  An award of just over

$100,000 does not exaggerate that success, particularly in light of the fact that all of the same

discovery and witness preparation would have been required, even if he had only brought the claim

against the single defendant against whom he eventually prevailed.  Accordingly, the court declines

to exercise its discretion to decrease Binkovich's fee award.

---

[79] *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 789-90 (1989).

[80] *See Hensley v. Eckerhart,* 461 U.S. 424, 427 (1983) (remanding for further consideration of fees in light of the plaintiff's success on only one constitutional theory); *Harman v. City & Cnty. of San Francisco*, 158 Cal. App. 4th 407, 417 (2007) (requiring apportionment between "successful and unsuccessful claims").

[81] *See* 864 F.2d 1454, 1466 (9th Cir. 1988).

[82] *See id.*

[83] *Id.*

Case No. 5:11-cv-03774-PSG
ORDER GRANTING-IN-PART MOTION FOR JUDGMENT AS A MATTER OF LAW,
DENYING MOTION FOR A NEW TRIAL AND GRANTING-IN-PART MOTION FOR
ATTORNEY'S FEES

**4.   Binkovich Is Not Entitled To A 50% Enhancement Of The Lodestar**

The court will not, however, exercise its discretion to increase the award due to the case's

undesirability.  While it may be true that few attorneys would have accepted this case and litigated

it all the way to trial, that hesitancy does not arise because the case was especially risky or

complex.  It is a low dollar value case, as many injury cases are, yet the Bay Area is replete with

lawyers who handle such matters on a contingency basis.  Section 1988's fee award was

specifically designed to incentivize attorneys to take cases of constitutional import, even where the

contingency recovery was low.  Thus, the "undesirability" of this case due to its low dollar value

has already been accounted for in Binkovich's fee award.  Under a standard fee agreement, his

counsel would be entitled to perhaps 40% of the recovery, or about $20,000.  Here, he will receive

over $100,000.  Binkovich cites to no cases indicating that significant multipliers are common in

cases such as this,[84] nor has the court's own research uncovered any.  Binkovich is entitled to the

full lodestar amount of $103,396.82, but no more.

## IV. CONCLUSION

Barthelmy's motions for judgment as a matter of law and for a new trial are denied, but his

motion to strike the jury's punitive damage award is granted.   Binkovich's motion for attorney's

fees is granted in the amount of $103,396.82.

**IT IS SO ORDERED.**

Dated: August 15, 2014

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[84] *But see Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir. 1996) (doubling the fees awarded to an attorney willing to challenge the island's abortion laws in light of the fact that no other attorney on the island's small community would take the case).

Case No. 5:11-cv-03774-PSG
ORDER GRANTING-IN-PART MOTION FOR JUDGMENT AS A MATTER OF LAW,
DENYING MOTION FOR A NEW TRIAL AND GRANTING-IN-PART MOTION FOR
ATTORNEY'S FEES

United States District Court
For the Northern District of California